# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

_____MATTHEW MUTCH_____

            Plaintiff

                                   CASE NUMBER: <u>5:25-CV-01311-JKP</u>

                                         (Supplied by Clerk's Office)

<u>TRANSUNION, LLC; EQUIFAX, INC; EXPERIAN INFORMATION SERVICES, INC.;</u>
<u>AMERICAN EXPRESS NATIONAL BANK; NELNET SERVICING, LLC.</u>

            Defendant(s)

## FIRST AMENDED VERIFIED COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff, MATTHEW MUTCH, appearing pro se, respectfully submits this First Amended Verified Complaint for Damages and Jury Demand, and for cause of action against the above-named Defendants alleges as follows:

1.   Plaintiff hereby amends the original Verified Complaint filed in October 2025 to correct the name of the party originally identified as "Experian Services Corp." The correct legal entity is "Experian Information Solutions, Inc.," as confirmed by the Corporate Disclosure Statement filed November 18, 2025 (Dkt. 13).

2.  Plaintiff hereby amends the original Verified Complaint filed in October 2025 to correct the name of the party originally identified as "American Express Company." The correct legal entity is "American Express National Bank" as confirmed by the email correspondence.

3.  Plaintiff hereby amends the original Verified Complaint filed in October 2025 to correct the name of the party originally identified as "Nelnet, Inc." The correct legal entity is "Nelnet Servicing, LLC," as confirmed by the Corporate Disclosure Statement filed November 12, 2025 (Dkt. 7).

4.  This amendment is made pursuant to Federal Rule of Civil Procedure 15(a)(2) and Judge Pulliam's Standing Orders dated October 21, 2025.

5.  All references throughout the original Verified Complaint to "Experian Services Corp.", "American Express Company", and "Nelnet, Inc." are hereby amended and replaced with "Experian Information Solutions, Inc", "American Express National Bank", and "Nelnet Servicing, LLC" respectively.

6.  Except as expressly amended herein, Plaintiff reasserts and incorporates by reference all allegations, causes of action, claims for relief, and demands for damages stated in the Verified Complaint filed in October 2025, which remains in full force and effect against all named Defendants.

## VERIFIED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

PLAINTIFF, MATTHEW MUTCH, proceeding pro se and with full legal capacity to bring this action, respectfully files this Complaint and alleges the following upon personal knowledge and information:

## I. INTRODUCTION

1. This is an action for damages brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), arising from Defendants' willful and/or negligent violations of their statutory obligations to ensure the maximum possible accuracy of consumer reporting, to conduct reasonable investigations upon receipt of consumer disputes, and to cease reporting inaccurate information.

2. Plaintiff sent formal disputes to all Defendants beginning in June 2025. Despite repeated notices, certified mail confirmations, and Consumer Financial Protection Bureau (CFPB) complaints, Defendants failed to conduct reasonable reinvestigations or correct the inaccurate information as required under 15 U.S.C. §§ 1681i and 1681e(b).

3. The continued publication of inaccurate credit information caused Plaintiff actual harm, including a denied mortgage application by Rocket Mortgage, lost credit opportunities, and substantial emotional distress.

4. Plaintiff seeks statutory, actual, and punitive damages, costs, equitable relief, and any other relief the Court deems just and proper, arising from the willful and/or negligent conduct of Defendants under the FCRA.

## II. DEMAND FOR JURY TRIAL

5. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

### III. JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331. This Court has subject matter jurisdiction over this action as it involves federal questions pertaining to the FCRA, which confers original jurisdiction on federal district courts of all civil actions arising under the laws of the United States.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C. § 1681p, because Plaintiff resides in this District, Defendants regularly conduct business within this District, and a substantial part of the events giving rise to the claims occurred in this District.

8. Plaintiff resides in Comal County, Texas, which lies within the San Antonio Division of the United States District Court for the Western District of Texas.

9. Defendants Equifax Inc. and TransUnion LLC maintain registered agents for service of process in Travis County, Texas. Defendants Experian Information Solutions, Inc., American Express National Bank, and Nelnet Servicing, LLC also conduct business in this District and have purposefully availed themselves of the privilege of conducting activities in Texas.

### IV. PARTIES

10. Plaintiff MATTHEW MUTCH is a natural person and consumer as defined by 15 U.S.C. § 1681a(c). He resides in Comal County, Texas.

11. Defendant TRANSUNION LLC ("TransUnion") is a foreign limited liability company organized under the laws of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion regularly conducts business in Texas

and may be served through its registered agent, Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

12. Defendant EQUIFAX INC. ("Equifax") is a foreign for-profit corporation organized under the laws of Georgia, with its principal place of business at 1550 Peachtree Street, Drop H-46, Atlanta, Georgia 30309. Equifax regularly conducts business in Texas and may be served through its registered agent, Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

13. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign for-profit corporation organized under the laws of Ohio, with its principal place of business at 475 Anton Blvd, Costa Mesa, California 92626. Experian regularly conducts business in Texas and may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

14. Defendant American Express National Bank ("Amex") is a national banking association headquartered at 200 Vesey Street, New York, NY 10285-4601. Amex regularly furnishes data to consumer reporting agencies and conducts business in Texas.

15. Defendant Nelnet Servicing, LLC ("Nelnet") is a foreign for-profit corporation organized under the laws of Nebraska, with its principal place of business at 121 S. 13th Street, Suite 201, Lincoln, NE 68508. Nelnet regularly furnishes data to consumer reporting agencies and conducts business in Texas. Nelnet may be served through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

**GENERAL ALLEGATIONS**

## V. FACTUAL ALLEGATIONS

A. TRANSUNION, LLC

16. Defendant TransUnion LLC ("TransUnion") is a consumer reporting agency as defined
    by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling, evaluating, and
    disbursing information concerning consumers for the purpose of furnishing consumer
    reports to third parties.

17. On or about June 5, 2025, Plaintiff submitted a formal written dispute to TransUnion
    pursuant to 15 U.S.C. § 1681i, identifying specific factual inaccuracies appearing in
    Plaintiff's credit file, including but not limited to: (1) tradeline data related to American
    Express and Nelnet, (2) obsolete addresses and personal identifiers, and (3) unauthorized
    credit inquiries lacking a permissible purpose.

18. Plaintiff provided TransUnion with sufficient identifying information, documentary
    support, and clear articulation of the disputed items. This included prior correspondence,
    proof of identity, and highlighted credit report excerpts. Delivery of the dispute was
    confirmed by USPS Certified Mail (Tracking No. 9214 8901 4298 0419 7848 99), signed
    for by authorized agent whose name appears to be Alfredo Hewitt on June 9, 2025.

19. On or about June 17, 2025, TransUnion issued a response asserting the disputed accounts
    were "verified as accurate," but failed to include any supporting documentation or
    disclosure of the verification method. TransUnion provided no written results of
    reinvestigation as required under 15 U.S.C. § 1681i(a)(6).

20. Plaintiff subsequently sent a second written dispute on July 18, 2025, restating the
    deficiencies in TransUnion's handling of the prior dispute and reiterating his statutory

demands for compliance under §§ 1681i and 1681e(b). This correspondence was also confirmed delivered via Certified Mail on July 24, 2025.

21. In both disputes, Plaintiff explicitly invoked his rights under the Fair Credit Reporting Act and demanded the removal or correction of inaccurate tradelines, the deletion of obsolete and extraneous personal identifiers, and a thorough investigation into unauthorized inquiries.

22. Plaintiff also filed a complaint with the Consumer Financial Protection Bureau (CFPB) on July 19, 2025, which was transmitted to TransUnion for response. As of the date of this filing, TransUnion's interim response admits receipt but does not provide a resolution.

23. Despite the clarity and sufficiency of Plaintiff's notices, TransUnion failed to conduct a reasonable reinvestigation, failed to delete or correct erroneous data, and failed to maintain procedures to ensure the maximum possible accuracy of the information it reported, in violation of 15 U.S.C. §§ 1681e(b) and 1681i.

24. On or about August 25, 2025, Plaintiff received an adverse action letter from Rocket Mortgage, LLC, denying his mortgage application. The letter identified "Amount owed on accounts is too high" and "Delinquent past or present credit obligations with others" as the reasons for denial. TransUnion's inaccurate reporting of outdated or misattributed balance information and derogatory tradelines contributed directly to these findings, causing Plaintiff actual damages under the FCRA.

25. TransUnion's refusal to correct Plaintiff's credit report has caused and continues to cause Plaintiff emotional distress, reputational harm, lost credit opportunities, and other actual

damages.

B. EQUIFAX INC.

26. Defendant Equifax Inc. ("Equifax") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), engaged in the practice of collecting, assembling, evaluating, and disseminating information about consumers to third parties.

27. On or about June 5, 2025, Plaintiff mailed a formal dispute letter to Equifax under 15 U.S.C. §§ 1681i and 1681e(b), citing inaccurate tradeline data (including accounts reported by American Express and Nelnet), obsolete personal identifiers, and unauthorized inquiries. Delivery was confirmed via USPS Certified Mail Tracking No. 9214 8901 4298 0419 7869 16.

28. On July 1, 2025, Equifax responded to Plaintiff's dispute but failed to provide the required verification, investigation results, or documentation. The response merely asserted that the items had been "verified as accurate," without disclosure of any reinvestigation method or the identity of the furnishing party.

29. On or around July 19, 2025, Plaintiff mailed a second dispute letter directly to Equifax's registered agent at Prentice-Hall Corp. System in Austin, TX. Delivery was confirmed on July 24, 2025, under USPS Tracking No. 9214 8901 4298 0422 7324 12., received by authorized agent appearing to be Eric Anderson [sp?].

30. On or about July 19, 2025, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (CFPB), Complaint ID #250722-22511899, alleging Equifax's continued noncompliance with the FCRA. The CFPB transmitted the complaint to Equifax. Equifax's interim response, dated July 22, 2025, stated additional time was

needed to respond, and their final response dated September 11, 2025, again failed to verify or correct the disputed items.

31. Plaintiff received a second generic response from Equifax dated July 25, 2025, which again failed to provide meaningful information about any investigation conducted or evidence supporting the ongoing reporting of the disputed information.

32. On September 16, 2025, Plaintiff sent a third and final written dispute to Equifax's registered agent, reiterating all prior FCRA violations and identifying the Rocket Mortgage denial dated August 25, 2025, as a direct consequence of Equifax's continued misreporting. This dispute was delivered and signed for by Chandler Crow [sp?] on September 20, 2025, via USPS Tracking No. 9214 8901 4298 0427 1711 31.

33. Equifax has willfully and/or negligently failed to perform reasonable reinvestigations in response to Plaintiff's disputes, in violation of 15 U.S.C. § 1681i, and has failed to maintain and follow reasonable procedures to assure maximum possible accuracy in violation of § 1681e(b).

34. As a direct result of Equifax's conduct, Plaintiff has suffered actual damages, including the denial of credit, reputational harm, emotional distress, and financial loss.

C. Experian Information Solutions, Inc.

35. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), regularly engaged in the business of assembling and evaluating consumer credit information for the purpose of furnishing consumer reports to third parties.

36. On or about June 5, 2025, Plaintiff sent a formal dispute letter to Experian, disputing the accuracy of multiple accounts and personal identifiers, including those associated with American Express and Nelnet. This dispute was mailed via USPS Certified Mail No. 9214 8901 4298 0419 7870 50 and was delivered to Experian's Dispute Department on June 24, 2025, in Allen, Texas.

37. Plaintiff's dispute identified specific errors including inaccurate balance information, erroneous payment histories, improper personal identifiers, and unverifiable past addresses. The dispute demanded reinvestigation and correction under 15 U.S.C. § 1681i and required Experian to verify all information under § 1681e(b) or delete it if unverifiable.

38. Experian responded to the June 5, 2025, dispute on June 11, 2025, with a letter that refused to investigate on the grounds that the request was "not authorized," despite the submission including Plaintiff's signature, government-issued ID, and proof of address.

39. On or around September 2, 2025, Plaintiff mailed a second dispute to CT Corporation System, the registered agent for Experian. USPS Certified Mail No. 9214 8901 4298 0425 9810 77 confirms delivery on September 6, 2025 and was signed for by Chris Wells, agent. This second letter reasserted Plaintiff's dispute, enclosed additional verification, and noted Experian's failure to conduct a lawful reinvestigation or to comply with its statutory duties.

40. On or around September 16, 2025, Plaintiff mailed a separate notice of intent to file suit to Experian's registered agent at CT Corporation System in Dallas, Texas. USPS delivery was confirmed certified mail (#9214 8901 4298 0427 1710 70) on September 20, 2025 by agent signature appearing as Chris Wells.

41. Experian failed to substantively respond to any of Plaintiff's three dispute letters, and no evidence of reinvestigation or verification was ever provided to Plaintiff in response to the disputes.

42. On July 25, 2025, Plaintiff submitted a formal complaint to the Consumer Financial Protection Bureau ("CFPB") against Experian, alleging violations of the FCRA arising from Experian's refusal to conduct reinvestigation or correct false credit reporting. Experian acknowledged the complaint and responded through the CFPB portal but failed to provide adequate documentation or corrective action.

43. Defendant Experian's conduct constitutes willful and/or negligent violations of 15 U.S.C. §§ 1681i and 1681e(b) by failing to investigate disputes and by maintaining inaccurate information in Plaintiff's consumer file.

44. Rocket Mortgage sent an adverse action letter to Plaintiff dated August 25, 2025, referenced "Amount owed on accounts is too high" and "Delinquent past or present credit obligations with others."

45. Experian's failure to remove or correct outdated or unverified tradeline data—including inaccurate balances and late payment indicators—was a substantial factor in the denial of Plaintiff's mortgage application.

46. As a direct and proximate result of Experian's misconduct, Plaintiff suffered actual damages, including but not limited to emotional distress, loss of credit opportunity, reputational harm, and increased costs of credit.

D. American Express National Bank

47. Defendant American Express National Bank ("American Express") is a furnisher of information to consumer reporting agencies within the meaning of 15 U.S.C. § 1681s-2. American Express regularly reports credit information to Equifax, Experian, and TransUnion, and is thus subject to the duties and obligations imposed by the FCRA.

48. On or about June 5, 2025, Plaintiff mailed a dispute and request for investigation to American Express (Attn: Credit Reporting Department located at P.O. Box 981537, El Paso, TX 79998) concerning a tradeline reporting inaccurate balance, payment history, and date of last activity. The letter was sent via USPS Certified Mail No. 9214 8901 4298 0419 7871 35 and was delivered and signed for by an authorized agent on June 09, 2025.

49. The signature of the agent appears to be Michael Rojas.

50. On or around June 11, 2025, American Express mailed Plaintiff a written response acknowledging receipt of his dispute. Rather than conducting a reinvestigation or correcting the false reporting, American Express merely reiterated its current reporting status and marked the account as "in dispute." American Express failed to provide any supporting documentation or undertake any reasonable investigation into the veracity of the reported data, in violation of 15 U.S.C. § 1681s-2(b).

51. On or around July 19, 2025, Plaintiff mailed a second dispute, reiterating the previously raised inaccuracies and asserting rights under 15 U.S.C. § 1681s-2(b). This dispute was confirmed delivered by USPS Certified Mail No.9214 8901 4298 0422 7324 74, signed for by Michael Rojas on July 24, 2025.

52. In both disputes, Plaintiff explicitly demanded that American Express either verify the disputed information as accurate, with documentary evidence, or request deletion of the tradeline from all consumer reporting agencies if unable to verify.

53. American Express failed to provide any written acknowledgment, investigation results, or explanation responsive to either dispute, and no corrections were made to the Plaintiff's consumer credit reports.

54. On July 21, 2025, Plaintiff submitted a formal complaint to the Consumer Financial Protection Bureau (CFPB), alleging that American Express had failed to conduct a reasonable investigation under 15 U.S.C. § 1681s-2(b) after receiving proper notice of Plaintiff's disputes.

55. Plaintiff's complaint included supporting documentation, including prior notices of dispute and USPS proof of delivery. American Express initially responded that the matter was "still being researched," and ultimately closed the CFPB complaint on August 29, 2025, with a generic explanation and no corrective action or documentation substantiating the accuracy of its reporting.

56. On or around September 16, 2025, Plaintiff sent a third and final letter to American Express, giving notice of intent to litigate, again invoking Plaintiff's rights under the FCRA. USPS delivery confirmation (tracking #9214 8901 4298 0427 1729 09) shows the letter was received by an authorized agent appearing to be Chris Wells on September 20, 2025 .

57. Upon information and belief, American Express failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681s-2(b) following notice from one or more consumer reporting agencies of Plaintiff's disputes.

58. On August 25, 2025, Rocket Mortgage sent an adverse action letter denying the Plaintiff's mortgage application based on "Amount owed on accounts is too high" and "Delinquent past or present credit obligations with others." American Express's failure to investigate or correct its tradeline reporting to consumer reporting agencies directly contributed to this outcome, resulting in further harm to Plaintiff.

59. Defendant's conduct constitutes willful and/or negligent violation of the FCRA. As a direct and proximate result, Plaintiff suffered actual damages including emotional distress, reputational injury, and financial harm.

E. Nelnet Servicing, LLC

60. Defendant Nelnet Servicing, LLC ("Nelnet") is a furnisher of information within the meaning of 15 U.S.C. § 1681s-2, which regularly reports credit information to consumer reporting agencies, including TransUnion, Equifax, and Experian.

61. On or around June 5, 2025, Plaintiff mailed a formal written dispute to the Credit Reporting Department of Nelnet (P.O. Box 82561, Lincoln, NE 68501) concerning materially inaccurate tradeline reporting. The dispute detailed multiple inaccuracies including erroneous reporting dates. USPS Certified Mail No. 9214 8901 4298 0419 7871 73 confirmed delivery on June 9, 2025 .

62. On or around July 19, 2025, Plaintiff sent a second dispute to Nelnet, explicitly referencing its failure to correct inaccuracies following notice of dispute. This second correspondence reiterated Plaintiff's rights under 15 U.S.C. § 1681s-2(b) and demanded

verification or deletion of the tradeline. USPS delivery was confirmed via certified

tracking #9214 8901 4298 0422 7324 on July 25, 2025.

63. In neither instance did Nelnet provide Plaintiff with reinvestigation results, or any

documentation supporting the accuracy of the data it continued to furnish.

64. On July 21, 2025, Plaintiff filed a formal complaint with the Consumer Financial

Protection Bureau (CFPB), alleging that Nelnet failed to conduct a reasonable

reinvestigation in response to Plaintiff's written disputes under 15 U.S.C. § 1681s-2(b).

65. The CFPB sent the complaint to Nelnet, which responded on August 6, 2025, by issuing a

conclusory explanation without addressing Plaintiff's documentary evidence or

correcting the disputed tradeline.

66. Nelnet failed to correct or delete the disputed tradeline and continued furnishing

inaccurate information to the national consumer reporting agencies.

67. On August 19, 2025, Nelnet sent a form letter to Plaintiff in response to his FCRA

dispute claim. The letter denied Plaintiff's claim without addressing the actual basis of

his dispute, and the absence of required verification under § 1681s-2(b).

68. Instead, Nelnet relied on an internal, conclusory determination offering no supporting

documents or reasoning responsive to the specific issues raised. The letter advised

Plaintiff to re-dispute with "new evidence" or risk a finding of frivolousness—thereby

shifting the burden inappropriately and disregarding the FCRA's reinvestigation mandate.

69. As a direct result, on August 25, 2025, Plaintiff received an adverse action letter from

Rocket Mortgage, denying his mortgage application. The stated reasons were: "Amount

owed on accounts is too high" and "Delinquent past or present credit obligations with

others." The disputed Nelnet tradeline materially contributed to these findings.

70. Nelnet's failure to investigate Plaintiff's disputes, coupled with its continued reporting of inaccurate data, constitutes a willful and/or negligent violation of 15 U.S.C. § 1681s-2(b).

71. As a result of Nelnet's conduct, Plaintiff suffered actual damages including credit denial, emotional distress, reputational harm, and financial injury.

## SUIT 1 - TRANSUNION, LLC

### Cause of Action 1 - Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) – Failure to Follow Reasonable Procedures

72. Plaintiff realleges and incorporates by reference all preceding paragraphs.

73. Defendant TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff.

74. Despite receiving multiple disputes directly from Plaintiff—each including documentation demonstrating that the "CFA Alert" designation and other derogatory tradelines were inaccurate and misleading—TransUnion continued to report this information without correction.

75. TransUnion's failure to implement effective safeguards resulted in the inclusion of highly prejudicial and false credit indicators that harmed Plaintiff's creditworthiness, dignity,

and emotional wellbeing.

76. As a result of these reporting failures, Plaintiff suffered adverse credit decisions, loss of credit opportunities, reputational harm, and significant emotional distress.

**Cause of Action 2 - Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i(a) – Failure to Conduct Reasonable Reinvestigation**

77. Plaintiff realleges and incorporates by reference all preceding paragraphs.

78. TransUnion violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation after Plaintiff disputed inaccurate information on multiple occasions.

79. TransUnion ignored or inadequately addressed the substance of Plaintiff's disputes, failed to meaningfully engage with the information and documentation provided, and persisted in reporting the inaccurate information.

80. TransUnion's reinvestigation process was perfunctory, unreasonably limited, and in violation of the duties imposed under the FCRA.

81. These failures directly caused Plaintiff to suffer quantifiable financial losses and significant emotional distress, including anxiety, frustration, and a loss of trust in the integrity of the credit reporting system.

**Cause of Action 3 - Willful and/or Negligent Noncompliance with the FCRA, 15 U.S.C. §§ 1681n and 1681o**

82. Plaintiff realleges and incorporates by reference all preceding paragraphs.

83. The conduct described above was either willful, under 15 U.S.C. § 1681n, or negligent, under § 1681o.

84. TransUnion's repeated failure to update Plaintiff's credit file in light of multiple detailed disputes demonstrates reckless disregard or, at minimum, negligent indifference to its legal obligations.

85. As a result, Plaintiff seeks actual damages, statutory damages between $100 and $1,000 per violation; punitive damages (for willful violations) as the court may allow; and reasonable attorney's fees and costs, as provided under 15 U.S.C. §§ 1681n and 1681o.

## SUIT 2 - EQUIFAX INC.

**Cause of Action 4 - Violation of 15 U.S.C. § 1681e(b) – Failure to Conduct Reasonable Reinvestigation**

86. Plaintiff realleges and incorporates by reference all preceding paragraphs.

87. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff.

88. Equifax continued to publish inaccurate and derogatory information concerning Plaintiff's credit file, including but not limited to falsely reporting that Plaintiff was deceased, and inaccurately flagging Plaintiff's file with a "CFA Alert," despite receiving multiple notices of dispute and documentation directly from Plaintiff establishing the errors.

89. The reporting of a "deceased" indicator rendered Plaintiff unable to obtain credit, triggered denials of credit and essential services, and subjected Plaintiff to reputational harm, distress, and financial injury.

90. Equifax knew or should have known the procedures it used were unreasonable and that the continued publication of inaccurate information would cause harm to Plaintiff.

91. As a direct result of Equifax's failure to implement reasonable procedures, Plaintiff suffered actual damages, including emotional distress, loss of creditworthiness, loss of credit opportunities, and economic harm, in an amount to be determined at trial.

**Cause of Action 5 - Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681i(a) –**
**Failure to Conduct a Reasonable Reinvestigation**

92. Plaintiff realleges and incorporates by reference all preceding paragraphs.

93. Equifax violated 15 U.S.C. § 1681i(a)(1)(A) by failing to conduct a reasonable reinvestigation of disputed information after receiving direct and repeated notices from Plaintiff challenging the accuracy of reported data.

94. Despite Plaintiff's submission of multiple disputes and supporting documentation, Equifax summarily "verified" inaccurate information without meaningful inquiry, failed to contact relevant furnishers or sources, and continued to report Plaintiff as deceased.

95. Equifax's reinvestigation process lacked the rigor required by law and demonstrated a systemic indifference to Plaintiff's rights under the FCRA.

96. As a result, Plaintiff was forced to expend time and resources repeatedly disputing false data, and suffered emotional anguish, lost credit opportunities, and economic losses.

**Cause of Action 6 - Willful and/or Negligent Noncompliance with the FCRA, 15 U.S.C. §§ 1681n and 1681o**

97. Plaintiff realleges and incorporates by reference all preceding paragraphs.

98. The violations described above were committed either willfully, under 15 U.S.C. § 1681n, or negligently, under § 1681o.

99. Equifax acted in reckless disregard of Plaintiff's rights under the FCRA by failing to correct known errors, employing inadequate dispute procedures, and persisting in the publication of harmful inaccuracies.

100. Equifax's willful noncompliance entitles Plaintiff to statutory damages, punitive damages, and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a).

101. In the alternative, Equifax's negligent noncompliance entitles Plaintiff to actual damages and attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a).

## SUIT 3 - Experian Information Solutions, Inc.

**Cause of Action 7 - Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b) – Failure to Follow Reasonable Procedures**

102. Plaintiff realleges and incorporates by reference all preceding paragraphs.

103. Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to ensure maximum possible accuracy in Plaintiff's consumer report.

104. Despite receiving multiple written disputes and copies of supporting documentation, Experian continued to report materially inaccurate information, including erroneous American Express and Nelnet account data, outdated personal identifiers, and

unauthorized inquiries.

105.    Experian had actual notice of the disputed nature of the reported information but

failed to reasonably verify or remove the inaccuracies, resulting in a false credit profile.

106.    These failures caused Plaintiff to suffer reputational damage, adverse credit decisions,

and emotional distress, including but not limited to a mortgage denial on August 25,

2025.

**Cause of Action 8 - Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681i(a) –**
**Failure to Conduct Reasonable Reinvestigation**

107.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

108.    Experian failed to comply with 15 U.S.C. § 1681i(a)(1)(A) by refusing to conduct a

reasonable reinvestigation into Plaintiff's multiple formal disputes submitted via certified

mail and acknowledged as received.

109.    On June 11, 2025, Experian wrongfully rejected Plaintiff's dispute by asserting it did

not originate from Plaintiff, despite full compliance with the FCRA. This constitutes a

procedural denial of statutory rights.

110.    After repeated notices, including those on July 8, July 11, and September 6, 2025,
         Experian failed to correct or delete the inaccurate items, instead "verifying" them without
         proper investigation.

111.    Experian's conduct caused Plaintiff to suffer quantifiable economic harm, loss of
         credit opportunity, financial anxiety, and emotional injury.

**Cause of Action 9 - Willful and/or Negligent Noncompliance, 15 U.S.C. §§ 1681n and 1681o**

112.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

113.    Experian's repeated non-responsiveness and bad faith rejection of valid disputes
         constitute willful noncompliance under 15 U.S.C. § 1681n.

114.    Alternatively, Experian acted negligently by failing to conduct any meaningful
         reinvestigation, even when placed on explicit notice by Plaintiff and by the Consumer
         Financial Protection Bureau (CFPB), Complaint ID #250721-22499196.

115.    Experian's willful and/or negligent conduct entitles Plaintiff to statutory damages,
         actual damages—including emotional distress and loss of credit opportunity—punitive
         damages, and the costs of litigation.

## SUIT 4 - American Express National Bank

**Cause of Action 10 - Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) – Failure to Conduct a Reasonable Investigation and Correct Inaccurate Reporting**

116.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

117.    Defendant American Express is a "furnisher" of information to consumer reporting agencies within the meaning of the FCRA and is bound by the duties set forth in 15 U.S.C. § 1681s-2(b).

118.    After receiving notice of Plaintiff's dispute from one or more CRAs via the ACDV system, American Express had an affirmative legal duty to: (A) conduct a reasonable investigation; (B) review all relevant information provided by the CRA; (C) report the results to the CRA; (D) correct any inaccuracies; and (E) cease furnishing unverifiable or false information.

119.    American Express violated each of these duties by summarily "verifying" the inaccurate tradeline without conducting a meaningful investigation or producing documentary support.

120.    American Express's failure to conduct a good-faith reinvestigation was willful or, at minimum, negligent, and resulted in materially false data remaining on Plaintiff's credit

reports.

121.    As a direct result, Plaintiff suffered actual damages including loss of credit

opportunity (mortgage denial), increased borrowing costs, reputational harm, and

emotional distress.

**Cause of Action 11 - Willful and/or Negligent Noncompliance with the FCRA, 15 U.S.C. §§**
**1681n and 1681o**

122.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

123.    American Express acted either willfully or negligently in failing to comply with the

obligations imposed by 15 U.S.C. § 1681s-2(b), as evidenced by its repeated disregard of

dispute evidence and failure to correct known inaccuracies.

124.    Plaintiff is entitled to actual or statutory damages between $100 and $1,000 per

violation; punitive damages as the court may allow;, and attorney's fees and costs

pursuant to 15 U.S.C. §§ 1681n and 1681o.

**SUIT 5 - Nelnet Servicing, LLC**

**Cause of Action 12 - Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) –**

**Failure to Investigate, Correct, and Cease Reporting Inaccurate Information**

125.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

126.    Defendant Nelnet Servicing, LLC is a furnisher of credit information governed by the
FCRA and was required under 15 U.S.C. § 1681s-2(b) to reasonably investigate
Plaintiff's disputes upon notification by CRAs.

127.    Nelnet received Plaintiff's disputes through multiple channels including ACDV
notices from Experian, Equifax, and TransUnion, as well as via formal complaints filed
with the CFPB (Complaint ID #250722-22512186).

128.    Despite receiving adequate notice and documentation, Nelnet repeatedly "verified"
disputed information without conducting a meaningful investigation or supplying proof
of accuracy, in violation of 15 U.S.C. § 1681s-2(b)(1)(A)-(E).

129.    As a result of Nelnet's conduct, inaccurate and harmful tradelines remained on
Plaintiff's credit report, directly leading to a denial of credit and further harm.

130.    Plaintiff suffered tangible actual damages including a denied mortgage application,
loss of favorable loan terms, emotional distress, and reputational injury.

**Cause of Action 13 - Willful and/or Negligent Noncompliance with the FCRA, 15 U.S.C. §§ 1681n and 1681o**

131.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

132.    Nelnet acted with willful disregard or, in the alternative, negligent indifference to its statutory duties by repeatedly ignoring Plaintiff's disputes and failing to reinvestigate or correct the erroneous information.

133.    Plaintiff seeks actual damages or statutory damages between $100 and $1,000 per violation, punitive damages, and recovery of costs and attorney's fees under 15 U.S.C. §§ 1681n and 1681o.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants TransUnion, LLC; Equifax, Inc.; Experian Information Solutions, Inc.; American Express National Bank; and Nelnet Servicing, LLC, jointly and severally and award the following relief:

Actual Damages pursuant to 15 U.S.C. §§ 1681n and 1681o, in an amount to be determined at trial, for:

1. Loss of credit opportunity, including but not limited to denial of mortgage financing by Rocket Mortgage on August 25, 2025;

2. Increased borrowing costs and inability to secure favorable loan terms;

3. Emotional distress, mental anguish, humiliation, and reputational harm caused by the continued dissemination of inaccurate credit information;

4. Time, effort, and expenses incurred in disputing and attempting to correct Defendants' unlawful reporting.

Statutory Damages of up to $1,000 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A), for Defendants' willful noncompliance with the FCRA.

Punitive Damages in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n(a)(2), to punish Defendants for their willful and reckless disregard of Plaintiff's rights and to deter similar conduct in the future.

Costs of Litigation and Attorney's Fees as provided by 15 U.S.C. §§ 1681n and 1681o, recognizing Plaintiff's pro se status and equitable entitlement to reimbursement of litigation costs.

Injunctive and Equitable Relief, including but not limited to:

1. An order directing Defendants to immediately delete, correct, or suppress all inaccurate and unverifiable information regarding Plaintiff;

2. An order requiring Defendants to implement and maintain reasonable procedures to assure maximum possible accuracy in compliance with 15 U.S.C. § 1681e(b).

Plaintiff hereby demands a trial by jury on all claims so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Such other and further relief as this Court deems just, equitable, and proper, including but not limited to pre- and post-judgment interest.

# JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

Dated: November 19, 2025

Respectfully Submitted,
/s/ *Matthew Mutch*
Matthew Mutch, Plaintiff, Pro Se
173 Caddell Ln
New Braunfels, TX 78130
Phone: (562) 458-7790
Email: mattmutch@gmail.com

# VERIFICATION

I, Matthew Michael Mutch, am the Plaintiff in the foregoing Verified Complaint for Damages. I have read the foregoing Complaint and know the contents thereof. The facts stated in this Complaint are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 19th day of November, 2025, at New Braunfels, Texas.

*/s/ Matthew Mutch*

# CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of November, 2025, I caused a true and correct copy of the foregoing *Verified Complaint for Damages with Jury Demand, together with the accompanying Civil Cover Sheet and Proposed Summonses*, to be filed with the United States District Court for the Western District of Texas, San Antonio Division, and served upon each Defendant listed below by depositing same in the United States Mail, first-class postage prepaid, properly addressed as follows:

**United States District Court**
Western District of Texas
Executive Office of the Clerk
262 West Nueva Street
Room 1-400
San Antonio, Texas 78207

I certify that the foregoing was mailed in compliance with the applicable Federal rules of Civil Procedure and Local rules of the Western District of Texas.

*/s/ Matthew Mutch*