# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| MATTHEW MUTCH, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | Civil Action No. 5:25-cv-01311-JKP |
| TRANSUNION LLC; EQUIFAX, INC.; § | |
| EXPERIAN SERVICES CORP.; § | |
| AMERICAN EXPRESS COMPANY; § | |
| NELNET, INC., § | |
| § | |
| Defendants. § | |

### DEFENDANT NELNET SERVICING, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF NO. 30)

Defendant Nelnet Servicing, LLC (hereinafter, "Nelnet") hereby submits this Response in Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 30) (hereinafter, "Plaintiff's Motion"). In support thereof, Nelnet states the following:

**I.      INTRODUCTION**

1.      This Court has a generous standing order that allows a plaintiff to automatically amend their complaint to avoid a potential motion to dismiss if the plaintiff so chooses. However, if the plaintiff declines the opportunity to amend, he must live with that consequence and the defendant then gets its opportunity to be heard on the motion to dismiss.

2.      Plaintiff here wants to have it both ways. When Nelnet raised the Court's standing order and informed Plaintiff of its intention to move to dismiss, Plaintiff defiantly stood on his complaint and declined the opportunity to amend. Plaintiff had already amended previously, too.

3.      Plaintiff opposed Nelnet's motion to dismiss just days after it was filed. However, almost immediately after Nelnet filed its reply brief, Plaintiff had a sudden change of heart, and

now wants to amend after all. Plaintiff asks the Court for leave to file a third complaint (the Second Amended Complaint (ECF No. 30-1, and hereinafter, "SAC")) in as many months.

4.  This Court should deny Plaintiff's Motion. The Court's standing order seeks to avoid this very scenario. Plaintiff must be held to the choices he made. Plaintiff's Motion should further be denied because the SAC *still* fails to comply with the pleading standard, and is a part of a pattern of failing to state a claim by not alleging the most central element of the claim. If the Court grants Plaintiff's Motion, it will prejudice Nelnet by condoning Plaintiff's delay, and allowing him to force Nelnet to fully brief a motion to dismiss, and to claim the benefit of the Court's standing order, but without actually following it. The Court's standing order seeks an efficient disposition of a meritless claim, but Plaintiff seeks the opposite result. The Court should prevent Plaintiff from trying to engage in endless bites at the apple.

## II.  LEGAL STANDARD

5.  While Fed. R. Civ. P. 15(a) does provide a "liberal standard for granting leave to amend, it has long been recognized that certain factors weigh against granting leave." *Barnes v. Madison*, 79 Fed. Appx. 691, 698 (5th Cir. 2003) "These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Id.* citing *Foman v. Davids*, 371 U.S. 178, 182 (1962).

## III.  ARGUMENT

### A.  Plaintiff's Motion Should be Denied Because it Conflicts with the Court's Standing Order on Motions to Dismiss.

6.  For starters, the Court should deny Plaintiff's Motion because of the practice in this Court for how motions to dismiss are adjudicated, and Plaintiff's choices on that same issue.

7. This Court has a generous standing order that is meant to give plaintiffs an opportunity to amend around a potential motion to dismiss if they so choose when the defendant calls their attention to deficient pleadings. However, the trade-off is that the Court also expects the plaintiff to live with the choice they make. If the plaintiff declines the opportunity to amend, the Court's standing order provides certainty to the defendant in moving to dismiss because the court's order contemplates that a successful motion will result in dismissal without leave to amend. *See* Section 1 of Standing Order in Civil Cases Assigned to Judge Jason Pulliam.[1]

8. The Court's standing order seeks an efficient disposition of attacks on the pleadings by forcing both parties to decide whether to take their chances on a motion to dismiss (and giving them each an out), with the hopes of avoiding the potential undue delay caused by amendments immediately after the filing of dispositive motions or dismissal orders. Plaintiff's Motion, however, furthers the very inefficiency that the Court's standing order is designed to prevent.

9. A recitation of the procedural history in this case makes the inefficiency clear. Plaintiff first amended his complaint even before Nelnet began the process of following the Court's standing order on motions to dismiss. Plaintiff amended for the first time after the consumer reporting agencies ("CRAs") previously made the exact same argument that Nelnet made in its motion to dismiss. *See* ECF No. 9. Plaintiff then, just as he attempts to do now, held firm during the conferral with the CRAs and stood on his pleading, but then sought to amend immediately after the CRAs filed their motion to dismiss. *See* ECF No. 9, 16.

10. Plaintiff's First Amended Complaint, however, was still deficient. When Nelnet raised the Court's standing order process to Plaintiff and informed him that he had another opportunity to correct his pleading to stave off dismissal, Plaintiff explicitly declined to amend.

---

[1] Available at: https://www.txwd.uscourts.gov/wp-content/uploads/2023/01/Standing-Order-In-Civil-Cases-Assigned-to-Judge-Jason-Pulliam101922.pdf (last visited January 5, 2026).

Plaintiff stated that he "stand[s] by my pleading (ECF No. 16-1), which properly alleged both inaccuracy and failure to comply with the [FCRA]…" As a result of Plaintiff declining the opportunity to amend, Nelnet filed its Motion to Dismiss, which Plaintiff then opposed.

11.     No one forced Plaintiff to make this decision, but the Court's standing order contemplates Plaintiff sleeping in the bed that he made. Instead of doing so, Plaintiff now seeks leave to amend his pleading only three days *after* forcing Nelnet to complete the briefing on its motion to dismiss. This scenario is the exact opposite of the inefficiency that the Court's standing order seeks to avoid. And as demonstrated below, not only would Nelnet be prejudiced by a third complaint being filed in three months, but Plaintiff's proposed SAC *still* does not allege what was inaccurate about Nelnet's credit reporting (because there was nothing inaccurate about the reporting). Nelnet followed the Court's standing order, and although Plaintiff did not, he still wants the benefit of it.[2] The Court should deny Plaintiff's Motion because it seeks to obtain an inefficient and unfair outcome that this Court's standing order seeks to avoid.

**B.    The Court Should Deny Plaintiff's Motion Because the SAC Would Still Fail to State a Claim, and is a Part of a Pattern of Failing to Cure Deficiencies by Amendment.**

12.     The Court should also deny Plaintiff's Motion because even if the SAC became the operative pleading, the result would be no different: Plaintiff's SAC would still be deficient on the threshold element of inaccurate credit reporting. Leave to amend would be futile.

13.     Nelnet's Motion to Dismiss explained how Plaintiff is obligated under the FCRA to allege inaccurate credit reporting. Plaintiff must say what was wrong about the credit reporting, and why it was wrong (or what it should have been instead). Rather than do that, Plaintiff's first

---

[2] Plaintiff further has not complied with the local rules by failing to confer on his Motion under Local Rule CV-7.g and informing the Court of the defendant's position in the motion.

two complaints instead offered speculative conclusions that something might be wrong with the credit reporting, but everyone was left to guess what was wrong and why.

14. While the SAC may move the ball a yard or two down the field, it still does not even come close to the first down marker; the SAC *still* does not identify what was inaccurate about the credit reporting and say why it was inaccurate.

15. Instead, Plaintiff's theory appears to be only that different CRAs have reported different data for certain fields such as the date opened date, the balance amount, and the last payment date. *See* ECF No. 30-1, ¶¶ 28, 30, 36, 50, 55, 69-71, 73, 99. Even if that is true, the SAC is still deficient because Plaintiff never says *what it is* about that credit reporting that is inaccurate. While the Court is not obligated to read things into the pleading that do not exist, if Plaintiff's theory is that one of the two things reported by different CRAs had to be wrong, not only is that not true[3], but he never says which one it is that is wrong, and why. *See Omiagbophillips v. Digit. Fed. Credit Union*, No. 23-cv-240, 2024 U.S. Dist. LEXIS 37268, at *11-12, 2024 WL 898914 (E.D. Tex. Feb. 8, 2024) (explaining that the plaintiff "must specifically allege the inaccuracy that he noted in his credit report to survive the motion to dismiss" and "without further information regarding the alleged errors, plaintiff's allegations are conclusory statements and do not rise above the level of mere speculation."); *Martin v. Equifax Info. Servs., LLC*, No. 19-cv-3691, 2020 U.S. Dist. LEXIS 67649, at *5, 2020 WL 1904496 (S.D. Tex. April 17, 2020) ("Any conclusory allegations by Plaintiff that the report is inaccurate do not create a claim sufficient to survive a motion to dismiss."). This is the same outcome as the original complaint and the FAC.

---

[3] Plaintiff's theory fails to acknowledge that there is no plausible contention of inaccuracy if the basis for inaccuracy is that the reported balance amount was different over time. Of course, the balance of an interest-bearing loan, especially if any payments were made (and Plaintiff seems to concede payments were made) would change over time, as would the last payment date.

16. This deficiency is made most apparent in the section of the SAC directed specifically towards Nelnet. *See* ECF No. 30-1, ¶¶ 99, 101. Most of the SAC focuses on comparing the different data reported by different CRAs, apparently as of different dates reported (which explains at least some of the discrepancies as identified in footnote 3), and speculates that one of them has to be wrong. But the allegations specifically directed towards Nelnet do not remotely say what it is that *Nelnet* reported incorrectly. *See* ECF No. 30-1, ¶¶ 98-102. This explanation and any supporting allegations do not exist in the SAC because Plaintiff does not know what Nelnet reported incorrectly, because Nelnet did not report anything incorrectly.

17. Despite the SAC being the third complaint, the Court does not have any clearer of an answer to the most threshold question in the case: what is inaccurate about the credit reporting, and why it is inaccurate (or what it should be instead). The SAC is just another iteration of a speculative, conclusory theory that something might be wrong, but Plaintiff never says what is wrong and why. Despite three conferrals and two motions to dismiss amongst the various defendants that told Plaintiff exactly what he needed to allege to survive dismissal, those allegations still do not appear in the SAC. *See Montez v. Tex Vista Med. Center/Southwest Gen. Hosp.*, No. 22-cv-851, 2023 U.S. Dist. LEXIS 52902, at *9, 2023 WL 2950635 (W.D. Tex. March 16, 2023) ("further leave to amend may be denied if amendment would be "futile" and "the amended complaint would fail to state a claim upon which relief could be granted.") citing *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). The reason this question has not been answered by Plaintiff despite three lengthy complaints is because, at least with respect to Nelnet, there was no inaccurate credit reporting. Nelnet should not be forced to again indulge Plaintiff in his fishing expedition. Leave to amend would be futile.

### C. The Court Should Deny Plaintiff's Motion Because of Undue Delay by Plaintiff and the Resulting Prejudice to Nelnet.

18. Finally, the Court should deny Plaintiff's Motion because granting it would prejudice Nelnet. In addition to the prejudices described in the previous sections, granting Plaintiff's Motion would result in Plaintiff forcing Nelnet to fully brief a motion to dismiss based on Plaintiff's choice to decline the opportunity to amend to avoid that very motion, all for nothing. In other words, Plaintiff wants to avoid the motion to dismiss by amending now after the motion to dismiss was fully briefed, when he could have avoided the motion to dismiss altogether by amending previously. This is a scenario this Court's standing order seeks to avoid.

19. As demonstrated above, the Court's standing order gave the Plaintiff the unfettered right to amend his pleading instead of having to defend against a motion to dismiss. Plaintiff declined that opportunity, and was instead defiant. Nelnet was comforted in relying on Plaintiff's position that he passed up on his opportunity to amend, and filed its motion to dismiss, which Plaintiff responded to just two days later. But after declining to amend and after fully briefing the motion to dismiss, Plaintiff then flip-flipped and filed the instant motion.

20. The Court granting Plaintiff's Motion would unfairly prejudice Nelnet. Nelnet invested substantial resources preparing a dispositive motion. *See Hall v. United Technologies, Corp.*, 872 F. Supp. 1094, 1102 (D. Conn. 1995) (citing *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993) for the notion that the defendants will be prejudiced if the court grants leave to file a second amended complaint when the motion for leave to amend was filed after the previously filed motion to dismiss had been fully briefed). Nelnet filed its motion to dismiss in reliance upon the Court's sound process in its standing order, and only after Plaintiff declined his no-strings-attached opportunity to avoid that very situation by amending his complaint. Only after the briefing was finished, Plaintiff then changed his mind and wants the very benefit of the Court's standing

order that he previously declined. If the SAC is allowed, Nelnet will have invested substantial resources relying upon Plaintiff's representations and the Court's standing order, but Plaintiff will gets to have it both ways by not following the Court's standing order, but claiming its benefits. This is an inequitable decision and the Court should prevent the potential prejudice by denying Plaintiff's Motion.

### III.  CONCLUSION

21.  While Plaintiff is *pro se*, that does not entitle him to endless bites at the apple, especially when it is clear he has no case. *See Fuentes v. Chavez*, 314 F. App'x 143, 145 (10th Cir. 2009) ("There is a limit to how many bites even a pro se plaintiff can have at the apple."). When the briefing on Nelnet's Motion to Dismiss was completed, Plaintiff at that point had numerous opportunities to say what was wrong with Nelnet's credit reporting, and he never did. He now wants another opportunity, through a third complaint in three months, to try to make that threshold showing. But the SAC still does not make those required allegations, and yet again, it is premised on speculative conclusions. The reason that no inaccurate credit reporting has been alleged despite these multiple opportunities, is because none exists.

22.  The Court's generous standing order should be enforced. Plaintiff had the opportunity to amend his complaint without consequence, but he chose not to, twice, and instead forced another party to fully brief a dispositive motion. The Court's standing order requires Plaintiff to stand behind his choices, not to prejudice other parties and create undue delay because of his buyer's remorse. If the Court were to allow the SAC, the Court's standing order would become illusory because Plaintiff would claim the benefits of the Court's standing order by not following it, and Nelnet would be prejudiced by following it. The Court should prevent this inequitable scenario from coming to fruition by denying Plaintiff's Motion.

8
HB: 4914-6427-3285.1

WHEREFORE, PREMISES CONSIDERED, Defendant Nelnet Servicing, LLC respectfully requests that the Court enter an Order denying Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 30).

DATE: January 6, 2026

Respectfully submitted,

HUSCH BLACKWELL LLP

By: */s/ Brandon S. Stein*
Brandon S. Stein
HUSCH BLACKWELL LLP
2415 E. Camelback Road, Suite 500
Phoenix, AZ 85016
(480) 824-7890 – Telephone
(480) 824-7905 – Facsimile
Brandon.Stein@HuschBlackwell.com
ATTORNEYS FOR DEFENDANT NELNET SERVICING, LLC

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon the following on January 6, 2026, via the CM/ECF Filing system to all parties of record.

By: */s/ Brandon S. Stein*
    Brandon S. Stein